THE SOUTHWESTERN MUTUAL BENEFIT ASSOCIATION V. NANCY SWENSON.

1. INSURANCE COMPANY — *Local Secretary — Valid Service of Summons.* Where a foreign mutual insurance company authorizes a person in this state, whom it designates as its local or branch secretary, to receive assessments from its members in this state, and countersign and deliver receipts therefor, and forward the money so received to the home office in another state, and the company has no other officer in the county where service is sought upon the company upon whom service may be had, *held,* that service on said local secretary is a valid service under our statute, and the refusal of the court to set it aside is not error.

2. EVIDENCE — *Supports Findings.* Record examined, and *held,* that it discloses sufficient evidence in support of the finding included in the verdict of the jury, that the deceased was not delinquent at the time of his death, that his membership had not lapsed, and his rights under said certificate were not forfeited.

3. ———— *Liability on Contract.* Where suit is brought on a benefit certificate for $2,000, issued by a mutual assessment insurance company, wherein the company promises to pay the beneficiary therein named 75 per cent. of the proceeds of one full assessment of all the members at the time of the member's decease, and the only issue in the case is whether or not the membership lapsed during the lifetime of the member, the beneficiary may recover thereon without proving a demand on the company to make an assessment to pay the loss, or that an assessment has been made, or, if made, the amount thereof.

4. ASSESSMENT — *Presumption.* In the absence of any proof on the part of the company, showing the amount of such assessment, the presumption in favor of the beneficiary was that an assessment would pay the full amount named in the certificate.

5. DAMAGES — *Instruction not Warranted.* In such a case an instruction as to the measure of damages is not warranted by the issue in the case, and the failure of the jury to observe such instruction is not, therefore, material error.

*Error from Butler District Court.*

ACTION by *Nancy Swenson* against the *Association,* to recover on a benefit certificate. Judgment for plaintiff, at the March term, 1889. New trial denied. Defendant brings error.

29— 49 KAS.

*Alfred McCaskey, H. C. Henderson,* and *Shinn & Yeager,* for plaintiff in error:

1. The court had no jurisdiction over the plaintiff in error, and erred in overruling the motion to set aside the service of the summons. We think that § 68 of art. 6 of ch. 80 of the Compiled Laws is intended to apply only to such corporations as are regularly doing business in this state. It seems to have been the policy of our legislature to make special provisions for service on the various kinds of corporations under various circumstances, and it has specially provided how service may be had on life-insurance corporations authorized to do business within this state, (Laws of 1885, ch. 131, § 139,) and we think, as the plaintiff in error had no office or officers within this state, and had not complied with the provisions of the statute last referred to, and had no agent soliciting or doing business for it within the state, that no service could properly be had upon it within this state; and certainly the evidence on the motion to set aside the service shows that, under the decision of this court in *Chambers v. Bridge Manufactory,* 16 Kas. 270, V. Brown, upon whom the service was had in this case, was not a clerk, managing agent or officer upon whom a legal service could be made which would bind the plaintiff in error, and give the court jurisdiction to try the cause. See, also, *U. P. Rly. Co. v. Pillsbury,* 29 Kas. 652.

It is a principle of the common law, that courts of one state or county have no jurisdiction over non-residents, or non-resident or foreign corporations. *Clark v. Navigation Co.,* 1 Story, 531. The manner of service on foreign corporations must be confined strictly to the statutes of the state. *Hubel v. Insurance Co.,* 33 Mich. 400; also, 30 id. 431. See, also, *Sadler v. Life Insurance Co.,* 60 Miss. 251; *Moore v. National Bank,* 92 N. C. 590.

In *Chambers v. Bridge Manufactory,* 16 Kas. 270, we have the principle laid down which it seems to us will govern this case. The court there says: "Service of a summons on a

corporation cannot be made on every person who may in some remote sense be styled a clerk of the corporation."

If it be claimed that the plaintiff in error has waived its right to question, at this time, the jurisdiction of the court below, by filing answer and contesting cause on its merits, we cite *Bentz v. Eubanks*, 32 Kas. 321, wherein, the same as in this case, a special appearance was made to the jurisdiction, by motion to set aside the service, the motion overruled, and leave given to answer, and trial had, and, on appeal, the court said: "In view of the special appearance to set aside the service, and the objections and exceptions taken to the ruling of the court, the subsequent proceedings did not cure the irregularities attending the issuance of the summons in the case." See, also, *Brenner v. Egly*, 23 Kas. 123. See, also, *Kingkade v. Myers*, 21 Pac. Rep. 557; *Lyman v. Milton*, 44 Cal. 635; *Kent v. West*, 50 id. 185; *Bentz v. Eubanks*, 32 Kas. 321.

2. The testimony in this case was positive and undisputed that there had been two assessments regularly made, Nos. 28 and 29, upon the death of two members of the association, upon which the insured was in default in the payment of one-half of assessment No. 28 and the whole of No. 29, and, by the terms of the policy and laws of the association, failure to pay said assessments in full, when due, relieved the association from all liability on the policy.

3. The third reason for a reversal of the case is found in the jury having ignored the instruction of the court as to the burden of the issues and the measure of damages. It is not necessary to inquire whether or not the instructions of the court were altogether accurate upon these points. It seems to be a well-established principle of law that the jury is bound by the law as laid down by the courts. *Davis v. McCarthy*, 40 Kas. 18; same case, 19 Pac. Rep. 356, where the court says: "This instruction and the explanation or illustration was given to the jury without objection. It thus became the law of the case, whether the instructions were correct or not, and it was the duty of the jury to obey it, and, under the evidence, uncontradicted, and this instruction, it was the mani-

fest duty of the jury to have returned a verdict for the defendant." The propriety of such a rule is apparent.

*E. N. Smith,* and *G. P. Aikman,* for defendant in error:

The court had jurisdiction of the case for any one of these reasons: First. The service on state superintendent was good, as the company was doing business in violation of law. Second. The local secretary, V. Brown, was then the only agent in this county, and no general agent in the state, as record shows. Third. The general appearance and answer waived any objection to service.

V. Brown had authority to collect money for the company, and was "local secretary," as shown by the printed notices furnished by the company. He was surely the chief officer of such agency. See § 69, Civil Procedure; also, § 70. So far as the evidence shows, he was managing agent of all business done here. Collins was the general agent for Kansas. The evidence shows that McCaskey was next in charge, and V. Brown next. He performed the same duties and was held out to the public as the local secretary. While Halbert denies that Brown was general agent, he does not deny that he was the chief officer in this county. Collins was the general agent for Kansas; he virtually appointed Brown, the company ratified his appointment and sent him the lists for collection, and signed "Vincent Brown, local secretary."

The claim of plaintiff in error that the policy was forfeited before death is not well founded, for the reasons that it was "increased to $2,000, July 9, 1887," and the evidence shows this was delivered to Collins, general agent, and not to Swenson. Collins, company agent, demanded $5 more before delivering the policy. The money was sent, and the money was accepted by Collins, the agent for Kansas and Iowa. The policy was delivered the last week in August, and Swenson died September 7; he could not be in default after he received the policy, and the claim that assessments Nos. 28 and 29 were not paid will not avail, for the reason that the $5 demanded by Collins, and paid before the delivery, was more

than the amount of the assessments. It must be held that the company is bound by the acts of Collins. The court will observe that the $10 paid first and the $5 paid before delivery of policy was very much in excess of the legal demands. The company, through Collins, demanded and collected this money, held the policy till the last of August, and now complains because compelled to pay, and if any one is at fault it was the company and not Swenson.

The last objection in plaintiff's brief, that the evidence did not sustain the verdict, is answered by this statement: The court instructed the jury on measure of damage. The evidence shows the company was solvent; if solvent, then able to pay its obligations. The judgment is not in excess of the policy and interest.

The equity in this case is all with the defendant in error. The company came into Kansas, did business in violation of law, and with Collins as its general agent.

Opinion by STRANG, C.: Action on a benefit certificate issued by the defendant company to Charles Swenson, whereby the said company agreed to pay to Nancy Swenson, wife of the assured, 75 per cent. of one full assessment collected from all the members of the association. Summons was first issued and directed to the superintendent of insurance, and by him returned. A second summons was issued and served on V. Brown, a person who in the record is designated both as local collector and as local secretary. A motion was made to set aside the service, upon the grounds, first, that the service upon the superintendent of insurance was unavailing, because the company had not complied with the insurance law of Kansas in relation to non-resident companies, and was not eligible to do business in the state of Kansas at the time of the service, and was not soliciting any new business in the state at that time; and, second, that service of summons upon V. Brown was not binding upon the company because he was not an agent of the company, and held no such relation to the company as justified service upon him. Upon the hearing of this

motion a large amount of testimony was introduced, but after hearing the evidence and arguments of counsel the motion was overruled. An answer and reply were then filed, and the case went to trial before the court and a jury. A verdict was returned for the plaintiff for $2,215.44, the full amount named in the certificate, with interest. Motion for new trial was overruled.

May 7, 1887, a certificate for $1,000 was issued by the company to Swenson, the defendant in error being named as beneficiary therein. This certificate was afterward surrendered, and a new one issued in lieu of it for $2,000, under a provision in the by-laws of the company whereby a person holding a certificate may have it increased from $1,000 to $2,000. The company says that there are two methods of making such change: First, by a surrender of the existing certificate, and making a new application; second, by surrendering the existing certificate, and paying the fees and dues from the date of such certificate on the basis of a $2,000 certificate, in which case the increased certificate will bear the same date as the original certificate, giving the assured the benefit of the reserve fund from that date, and rendering him liable for all intermediate fees and assessments. It is claimed by the company that the increase from $1,000 to $2,000 in this case was secured under the latter method, and that the assured was liable for assessments 28 and 29, made June 14, 1887, and July 12 following, although the company does not claim the increased certificate was issued until July 9, 1887, and the defendant in error claims it was not issued until about July 25, 1887, and not delivered to Swenson until about the last week in August, 1887.

One Collins, who had been the regular agent for the company at El Dorado, secured the increase of insurance for Swenson. At the time he took the old certificate from Swenson, July 5, 1887, to take it with him to the home office to have it increased, Swenson paid him $10 to pay on increased certificate. July 12, following, Collins wrote a letter to defenlant in error, saying he had the policy on her husband fixed

for $2,000, but that she would have to send him $5 more that he had had to pay the company to get it, and promising to send the policy as soon as she sent the $5. She sent the $5 the last of July, and did not receive the certificate until the last week in August, just before her husband's death, which occurred September 7.

The plaintiff in error claims that the court erred in over-ruling its motion to set aside the service of summons. We think, however, that the service of summons upon V. Brown can be sustained under ¶ 4152, General Statutes of 1889. Brown was at least the agent of the company at El Dorado for the purpose of representing it in making collections of dues and assessments from members of the company holding certificates therein, and receipting for the same. He signed receipts as local secretary; that is, he designated himself as local secretary of the plaintiff company. In his testimony he said he was collection agent for the company at El Dorado. In the notices of assessments sent out from the home office, he is referred to both as local secretary and as branch secretary of the company. He also signed one of the papers in evidence as secretary of the local board. Mr. Halbert, secretary of the company, in his testimony on the trial, referred to Brown both as local collector and as local secretary of the company. Blank receipts were sent from the home office of the company to Brown, to be countersigned by him, as local or branch secretary, and delivered to members on payment of their assessments. And Brown was the only person in Butler county, where the case was tried, in any way authorized to represent the company. The company says it was not taking, at the date of service, and had not been for a long time, any new memberships in Kansas, and that it had no agent for that purpose in the state. However, it was still assessing members in the state and collecting the assessments here, and to that extent doing business here. We do not think it could do any business here through an agency for that purpose, even the settlement of their old business, without at the same time being here for the purpose of service. If the

company thought it proper and to its interest to have a local secretary or secretary of a local branch of said company here to do business for it, even to the extent of collecting and receipting assessments and forwarding them to the home office, we think, in the absence of any other officer or agent of the company upon whom service could be had in the county, that service upon him is good under our statute.

The plaintiff contends that the case should be reversed because the membership of the deceased had lapsed for nonpayment of assessments before he died. A provision of the charter, and also of the by-laws of the company, provides that if assessments are not paid within 30 days after notice thereof, the membership in said company shall lapse, and all rights under the certificate therein shall be forfeited. Assessment 28 was made June 14, 1887, and 29 was made July 12 following. The member died September 7 thereafter.

Plaintiff alleges that the only evidence in the case upon the subject shows that none of assessment 29 was ever paid, and that only one-half of assessment 28 was paid, and that, therefore, the verdict should have been for the defendant below. The full sum of money that the company was entitled to under both certificates at the death of the member was, for membership fees, $10; annual dues, $2; advance assessment on both certificates, $1.34; and $1.34 as payment on each of the assessments 28 and 29—or $16.02. The record shows payments by Swenson and wife on said certificates as follows: As per receipt of Collins, signed as agent, May 20, 1887, $6.67; receipt of Halbert, countersigned by Brown, July 2, 1887, 67 cents; payment to Collins when he took the old certificate to Iowa to have it increased, July 5, $10; and subsequent payment to Collins, last of July, of $5, which, in his letter of July 12, from Green, Iowa, where he was at the time acting as agent for the company, he said he had had to pay to the company to get the certificate increased; in all, $22.34 —$6.32 more than the company was entitled to. These figures show that, instead of the member being delinquent at the time of his death on assessments 28 and 29, he had

not only paid in full all fees, dues, and assessments, but had paid in advance, and had paid $6.32 more than the company was entitled to at the date of his death, and for which he was entitled to credit on the company's books. The company does not dispute any of these payments, but seeks to dispose of those made to Collins by saying he was not its agent, and had not been for more than a year at the time he solicited Swenson to become a member of plaintiff company by taking out a benefit certificate therein. Yet the company accepted the application for the $1,000 certificate, together with the fees, dues, and advance assessments, and issued the certificate. Afterward, at the request of Collins, and upon payment by him of $1.67, which Mr. Halbert, secretary of the company, says in his evidence was all that was required to be paid to secure the increased certificate, it issued the increased certificate and accepted the surrender of the original.

The company seems to have been willing to recognize this man Collins as its representative when securing business which it accepted, but wanted to repudiate his acts in receiving payment of fees, dues and assessments on such business. This will not do. When it accepted applications solicited by Collins and issued certificates thereon, it thereby ratified and was bound not only by his act in soliciting the business, but by his act in receiving the money paid him by the applicant thereon for fees, dues, and assessments. At the time Collins received the surrender of the $1,000 certificate from Swenson for the purpose of having it increased to $2,000 he also received from him $10 to pay fees, dues and assessments thereon. And when he turned the $1,000 certificate over to the company and requested it to issue the increased certificate he had Swenson's $10 in his pocket. The company accepted the surrender of the old certificate, and issued the new one for the increased amount. The $10 of Swenson's money at that time in the possession of Collins was sufficient, with the $6.67 paid when the first certificate was obtained, to pay all fees, dues and assessments on both certificates, including assessments 28 and 29. We hold that, in accepting the surrender

of the first certificate and issuing the one for the increased amount, it not only ratified Collins's act in so soliciting the increased insurance, but also his act in receiving payment from Swenson for all fees, dues, and assessments. And it makes no difference that Collins did not pay all the money over to the company at the time he turned over the old certificate and requested the issuance of the increased one.

After surrendering the $1,000 certificate to the company, Collins immediately commenced work, as the admitted agent of the company, at Green, Iowa, where he was representing the company when he wrote the letter on the 12th of July, demanding of Mrs. Swenson $5 more, that he said in his letter he had had to pay the company to secure the increased certificate, and where he was still representing the company the last of July or first of August, when he received the $5 demanded, and closed up the transaction by sending to Swenson the increased certificate. There can be no question about the company's liability so far as this payment is concerned, because it admits Collins was its agent at that time. We think the company is bound by all the payments made to Collins. This being true, the member at the time of his death was not delinquent, and the company was liable on the certificate. It follows, from the view this court takes of the relation Collins sustained to the company in connection with the certificate sued on, that it is not true that all the evidence in the record on the subject of payment of assessments 28 and 29 shows that they were never paid, but that on the contrary there is plenty of evidence showing that they were paid, and that therefore the case should not be reversed for the reason given in the second assignment of error.

The plaintiff also claims that the case should be reversed because, as it says, the jury ignored the instruction of the court as to the burden of the issues and the measure of damages. Plaintiff says the court instructed the jury that, to entitle the plaintiff to a verdict—

"She must prove by a preponderance of the evidence all of the material allegations of her petition, including the amount,

if anything, she may be entitled to recover, and the measure of damages, if you find for her, is the proceeds of one full assessment that you may find from the evidence, collected from all members of the association up to the date of the death of said Charles Swenson."

It is said that such instruction was the law of the case so far as the jury were concerned; and, unless there was evidence showing how much could be collected on one full assessment, the jury should have brought in a verdict for the plaintiff for nominal damages only, even though they found the other issues in favor of the defendant in error. It is true that the instructions of the court are, to the jury trying the case, the law of the case. But where the trial court instructs the jury in relation to a question that is not at issue in the case, and the jury fail to regard it, such error is not material, because the instructions of the court should be confined to the questions at issue in the case. In this case the amount to be recovered by the plaintiff below was never at issue in the case. There is nothing in the pleadings that raises the question, and on the trial no evidence was offered on the subject except that which appears in the certificate sued on. The case was not tried on the theory that some amount might be due the plaintiff below from the company, but on the theory that nothing was due from the company, because the membership had lapsed during the life-time of the deceased, and all rights under the certificate were forfeited before his death. The plaintiff below, under the pleadings, claimed the full amount of the certificate, while the defendant below denied any liability thereon, and that was the only issue tried by the jury. The evidence shows there never was any assessment to pay this loss. The instruction of the court to the jury touching the amount to be recovered, or the measure of damages, was wholly uncalled for and should not have been given, but, so far as this plaintiff is concerned, the instruction being in its favor, may be treated as immaterial, and the error of the jury in ignoring the instruction as immaterial.

But the plaintiff in error says there is nothing in the case

to show how much the plaintiff below was entitled to recover. And we find nothing in the record to show except the certificate. The making and delivering of the certificate sued on was not denied by the company; if, therefore, the company wanted to show that there was any sum less than the full amount of said certificate due the plaintiff below, it should have offered evidence showing what the proceeds of an assessment were. The certificate being in evidence, the plaintiff could recover without proving demand on the company to make assessments, or showing that assessments were made, or the amount of an assessment, if made. (*Protective Union v. Whitt*, 36 Kas. 760.)

In the absence of any proof on the part of the company showing the amount of an assessment, the presumption in favor of the beneficiary was, that an assessment would pay the full amount named in the certificate.

Finding no error in the record, we recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.