The Ancient Order of the Pyramids v. Susie Drake and O. E. Morgan.

No. 12,900.   (72 Pac. 239.)

SYLLABUS BY THE COURT.

1. Fraternal Insurance—*Proof of Death—Estoppel.* Where the by-laws of a fraternal insurance association provide that proof of death must be made on blanks furnished by its officers, and the officers upon reasonable demand refuse to furnish the blanks, the association cannot take any advantage from the failure of a claimant to make such proof.

2. ———— *Payment of Assessments—Invalid By-law.* Where the by-laws of a fraternal insurance association require a member, in order to remain in good standing and retain the benefit of his beneficiary certificate, to make payments of stated assessments to a local secretary, and no other method is afforded by which he can make such payments, a provision of such by-laws which, in substance, declares the local secretary to be the agent of the mem-

ber, and denies the member the benefit of a payment made to such secretary unless the secretary actually forwards the amount received to the general treasurer, is invalid and will not be given effect.

3. PRACTICE, SUPREME COURT—*Assignment of Error.* This court ordinarily will not examine any alleged error not included in a specification of error separately set out as such.

Error from Shawnee district court; Z. T. HAZEN, judge.  Opinion filed April 11, 1903.  Modified and affirmed.

*Edward C. Little, John Sullivan,* and *Merton J. Keys,* for plaintiff in error.

*David Overmyer,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: On February 28, 1898, the Ancient Order of the Pyramids, a fraternal insurance association, issued a beneficiary certificate to Elmer F. Drake by the terms of which, among other things, it agreed that in the event of his death it would, upon certain conditions, pay $2000 to Susie Drake and O. E. Morgan. Drake died July 23, 1898. The beneficiaries named in the certificate brought an action against the association on it, and upon a jury trial recovered a judgment for $2000 and interest, to reverse which the defendant brings this proceeding in error. The defenses were that membership had been forfeited by non-payment of assessments; that proof of death had not been properly furnished; and that the claim had not been submitted to the executive board of the association for determination prior to the bringing of the action.

The principal controversy in the case is whether Drake had paid all the assessments against him up to the time of his death, but this feature of the matter involves mainly a question of fact, and while the

evidence on the point did not remove all doubt, we think it was sufficient to uphold the verdict.

It is contended that plaintiffs failed to furnish proof of death as required by the laws of the order, and were, therefore, precluded from recovery. The laws thus invoked read as follows :

"Upon the death of a member in good standing holding a beneficiary certificate, it shall be the duty of the scribe of the council of which the deceased was a member to notify the royal scribe officially. The royal scribe will then send the proper blanks upon which to make proof of death, which shall be filled out by the attending physician and undertaker, certified before a legal officer, with his official seal attached thereto, attested by the officers of the council, under the council's seal, and returned to the royal scribe, whose duty it shall be to forward such proof of death with the original application and all information pertaining thereto to the royal medical director ; the royal medical director shall promptly pass on such proof of death and return it to the royal scribe. If approved by the royal medical director, the royal scribe shall file such proof in his office and submit the same to the executive board for their action at their next meeting. It shall be the duty of said board to examine the claim, and if approved, to order payment thereof.

"If the required proofs of death are not made by the beneficiaries or beneficiary named in the certificate according to the laws of the order and the provisions of the certificate, and upon a blank prescribed by the executive board and filed with the royal scribe within nine calendar months after the death, all claims whatsoever on account of such death and certificate shall be void."

1. Proof of death — association estopped.

The evidence shows that plaintiffs made strenuous, but unsuccessful, efforts to procure blanks upon which to make proof of death. Demands were made upon the scribe and upon the royal scribe for such blanks

and the demands were refused.   The claimants did, however, furnish affidavits seemingly embracing all the information intended to be covered by the more formal proofs.   Our attention has not been called to any action in this connection that plaintiffs could reasonably have been expected to take that they did not take.   Under such circumstances the failure of plaintiffs to comply more strictly with the by-laws cannot avail the defendant.   Moreover, there was evidence that the officers of the association claimed that the insured had forfeited his certificate by non-payment of assessments and on that account denied all liability. This made the absence of the proof of death immaterial.   ( *Cobb v. Ins. Co. of N. A.*, 11 Kan. 93 ; *German Ins. Co. v. Frederick*, 7 C. C. A. 122, 58 Fed. 144.)

It is further contended that the plaintiffs could not recover because their claim was not submitted to the executive board of the association prior to the bringing of the action.   This is only another form of the objection just considered, the particular laws of the order relied upon by plaintiff in error being those already quoted.   It will be seen from a careful examination of them that they do not, in terms, impose any duty upon the claimant with regard to the presentation and establishment of his claim.   The first step in the proceedings devolves upon the scribe, or local secretary.   He is to notify the royal scribe, or general secretary, of a death.   The royal scribe is then to send the proper blanks ( it is not stated to whom ) and they are to be filled out by the attending physician and undertaker, attested by the officers of the council, and returned ( it is not stated by whom ) to the royal scribe, who is to forward them to the medical director, who is to pass on them and return them to the royal scribe, who is to file them in his

office and to submit them to the executive board. Doubtless the reasonable inference is that it would be the duty of the claimant to notify the scribe of the death of the member, and to see that the proof of death was properly made whenever blanks were furnished, but the refusal of the officers of the association to supply the blanks, upon full notice and demand, certainly authorized the beneficiaries to bring an action without further preliminary steps.

Another complaint of error is based upon the claim of plaintiff in error that, even if the disputed assessment payment was in fact made to the scribe, the association was not bound unless the scribe remitted it to the grand scribe. In support of this theory it is urged, first, that under the by-laws the scribe, to whom payments are made, is, as to such payments, the agent of the member, and not of the association; and, second, that the payment, if made as claimed by plaintiffs, was made before maturity, and that, at all events, the scribe had no authority to bind the association by its reception until it was due. So far as concerns the second of these propositions it is enough to say that the by-laws require the payment of assessments on or before stated times, so that the payment could not have been premature. The other contention depends upon the effect of the following language found in law No. 37 :

2. Payment of assessments—invalid by-law.

" Every member of the beneficial department of the order shall on or before the 5th day of each and every calendar month pay to the scribe of his council his monthly assessment. . . . It is hereby declared to be the invariable law of the order, by which all members shall be bound, that any failure of any scribe of a subordinate council to collect, receipt for and remit all assessments shall be a neglect of duty charge-

able upon the members of such subordinate council, and shall not directly or indirectly bind the order in any manner whetever.''

It is to be noted, however, that by-law No. 13, in defining the duties of the scribe, provides :

''He shall keep a full and correct account between the council and its members, receive all moneys for the council, and pay the same to the treasurer before the close of each meeting, taking his receipt therefor.''

It, therefore, appears that, if assessments are classed as moneys received by the scribe for the council, it is not his duty to remit them to the royal temple, but to pay them to the local treasurer. Our attention is not called to any by-law, and upon an examination we find none, that requires the scribe to make any remittances direct to the general officers. If the parts of the by-laws quoted are inconsistent with each other, the insured should be given the benefit of the construction most favorable to him. (*National Reserve Association v. Mondrowski*, 20 Tex. Civ. App. 322, 49 S. W. 919.)

But apart from this consideration, while ordinarily it is competent for the association to make rules that shall be binding upon its members, and while courts have no control over the policy of such rules, yet this power is subject to the limitation that the rules must be reasonable. The association cannot change the character of the relation of a policy-holder to an officer by giving a name to it, nor can it alter the rights of the parties which under the law result from such relation. Under the by-laws the way, and the only way, by which the member could maintain his standing was by payment of his assessments to the scribe. He had no choice. He was not permitted to remit directly to the head office, unless, indeed, the council to which he belonged was under suspension. In view

of these provisions, the scribe, in receiving payments of assessments, was, in fact and in law, the agent of the association and not of the member. ( *Whiteside v. Supreme Conclave I. O. of H.*, 82 Fed. [C. C.] 275 ; *Schunck v. The Gegenseitiger Wittwen und Waisen Fond*, 44 Wis. 369 ; *McMahon v. Maccabees*, 151 Mo. 522, 52 S. W. 384.)

A final contention that appears to be well founded is that there was error in the amount recovered. The by-laws provide that where the insured dies before the expectancy of life designated upon his certificate the beneficiary shall pay into the reserve fund, out of the proceeds of the certificate, a sum equal to the amount the deceased member would have paid into the reserve fund had he lived the full period of such expectancy. In the present case this amount would be $74.64, and interest upon it up to the time of judgment would increase it to substantially $86.20. Defendants in error do not deny that this deduction should have been allowed if the demand for it had been made in a timely and proper manner. But they contend that it should have been pleaded as a counterclaim, whereas, it was never called to the attention of the trial court in any way. There was, we think, no necessity for the defendant to refer to this matter in its pleading. All the by-laws were made a part of the petition, and the certificate itself makes the payment of assessments during the full period of life-expectancy a condition precedent to recovery, subject to the conditions stated in the by-laws. It is true the by-laws speak of this amount as one required to be paid by the beneficiary out of the proceeds of the certificate, but we think the entire contract, the certificate and the by-laws being taken together, justifies

considering the amount as a deduction to be made in computing what is to be paid in case of a death.   It seems probable that the attention of the trial court was not in fact called to this feature of the case, but, as one of the grounds mentioned in the motion for a new trial was error in the assessment of the amount of recovery, the question was by this means, at least, formally raised, and we shall give the plaintiff in error the benefit of it.

A question has been argued in the briefs as to the correctness of an instruction given by the court that, where it is shown that an insurance order has issued a beneficiary certificate and that the insured is dead, and the order claims that it is not liable because of the failure of the insured to pay assessments for death benefits, then the burden of proof is upon the order to show such failure.   It has often been held that this is a correct statement of the law where the order is required to give notice of an assessment and where affirmative action of the order is necessary to change the standing of a member, the principle being that a condition of good standing being shown by the certificate it is presumed to continue until the contrary appears, but it is a serious question whether this rule applies to the case under consideration, where the assessments are fixed by the by-laws, are of a stated amount, becoming due at a prescribed time, and where a failure to meet a payment promptly of itself and at once extinguishes the claims of the delinquent member.   However, in the original brief filed by plaintiff in error there are no formal specifications of error whatever, and none of the specifications of error (seven in number) set out in a second brief, which is described as amending the first, in any way refers to this instruction.   We shall,

3. Assignment of error.

therefore, not undertake to determine this question at this time.

The judgment of the trial court will be reduced to $2223.80, and, as so reduced, affirmed. The costs in this court will be divided.

All the Justices concurring.