THE TRIPLE TIE BENEFIT ASSOCIATION V. A. J. WOOD.
No. 15,628.    (98 Pac. 219.)

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE — *Forfeiture* — *Waiver.* A fraternal benefit association will not be permitted to assert a forfeiture because assessments were not paid at the time stated in the by-laws, where by the adoption of a custom or the course of its conduct it has led the insured members honestly to believe that the assessments may be paid and will be received at times other than those specified in the rules. (*Foresters v. Hollis,* 70 Kan. 71, 78 Pac. 160.)

2. PETITION—*Waiver of Imperfect Allegations.* The defendant joined in an issue of fact upon an imperfect allegation of the existence of such a custom, without moving for a more definite statement, and the question thus presented was fully tried upon the merits. *Held,* that the defendant can not justly complain of the insufficiency of the petition to present an issue in which it thus voluntarily joined.

Error from Bourbon district court; WALTER L. SIMONS, judge. Opinion filed November 7, 1908. Affirmed.

*F. B. Dawes,* and *C. P. Rutherford,* for plaintiff in error.

*A. M. Keene,* and *E. C. Gates,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The plaintiff, A. J. Wood, moves for a dismissal of this proceeding because the record was not filed in the court within sixty days from the rendition of the judgment. (Gen. Stat. 1901, § 3580.) The record, however, was filed and the proceedings begun within sixty days from the date of the order denying the motion for a new trial, and this brings here for review the questions presented to the district court upon such motion. (*Osborne, Ex'r, v. Young,* 28 Kan. 769; *Bates v. Lyman,* 35 Kan. 634, 12 Pac. 33.)

The defendant, a fraternal benefit association, issued

a benefit certificate to Mrs. Wood on November 2, 1904. She died on July 12, 1906. Her surviving husband, the beneficiary, presented proper proofs and demanded payment as provided in the certificate, which was refused upon the ground that Mrs. Wood was not a member of the order in good standing at the date of her death; that she had been suspended on the last day of June for failure to pay an assessment for that month, under the operation of a by-law of the order, which was a part of her contract, as follows:

"If a member fails to make his regular monthly payments, local council dues and all assessments according to the laws of this association to the local secretary on or before twelve o'clock midnight of the last day of the month, then his certificate shall terminate at that hour and be null and void.".

The assessment had been regularly made, but was not paid until the 11th day of July.

Mrs. Wood was a member of local council No. 78, at Fulton, which is subordinate to the supreme council. The principal officers of the local council are president, secretary and treasurer. On June 30, 1906, it had sixteen members in good standing holding beneficiary certificates. Regular meetings were held and regular reports were made to the supreme council. It is the duty of the local secretary, prescribed in the by-laws, to report to the local council each month the names of all members suspended for the preceding month for failure to make monthly payments, and to forward to the supreme secretary on or before the 10th day of each month the report of his council for the preceding month, and at the same time to make remittance of all assessments received for the past month. The by-laws provide that if the report and remittance are not received by the supreme secretary before the 15th of the month the local council and its members are to stand suspended, upon notice from the president, secretary and treasurer of the supreme council.

On the morning of July.11, 1906, Mrs. Wood was ill, and had been for three days, but was not considered to be in a dangerous condition. She asked her husband to go to the local secretary and pay her dues, which he did. He testified as follows:

"Ques. Now what was said between you and Doctor Elliott, and what was done there at that time? Ans. I said to Doctor Elliott, 'My wife is sick this morning and wanted me to come over and see if she had paid her assessment for this month, and, if not, to pay it.'

"Q. What did he say? A. He did not say anything, but simply got up and got the book and wrote me a receipt, and I stuck it in my pocket and went home.

"Q. Did you pay him any money? A. Forty cents."

"Q. Was there anything said about her coming and making a written application for reinstatement? A. Nothing of that kind.

"Q. Was there anything said about your paying more than the one payment that you had to pay at that time? A. Nothing.

"Q. Was there anything said between you and Doctor Elliott at that time about the by-laws requiring a health certificate? A. Nothing of the kind.

"Q. Did you make any statement to him at the time that you knew the by-laws required anything of that kind? A. No, sir."

*(Cross-examination.)*

"Q. You did know it though, did n't you? A. Know which?

"Q. That the by-laws required a health certificate when it was paid after the 5th of the month? [Objection that the question was immaterial and not proper cross-examination overruled.] Q. You did know that the by-laws really required a health certificate, did n't you? A. Well, that was my impression. I don't know that I knew it.

"Q. That the by-laws did require it? A. Yes, sir."

The local secretary testified that Mr. Wood inquired about his wife's June assessment—that Wood said his wife was sick, and asked for a receipt—and then continued as follows:

"Ques. What did you say to him, if anything? Ans. I told him that the by-laws required a health certificate

and an application for reinstatement when the money was tendered after the 5th of the month.

"Q. What did he say?  A. He said he understood the by-laws.

"Q. Did he still offer to pay?  A. He made the payment.

"Q. And you gave him a receipt?  A. I gave the receipt.

"Q. After that conversation?  A. Yes, sir."

In the evening of July 11 Mrs. Wood became very sick, and died the next day at 11:30 A. M.  The amount so paid, with other payments of assessments received about that time, was remitted July 12 to the supreme secretary with a report which gave the name of Mrs. Wood, with others, as having paid the June assessment, and stated that they were in good standing.

On July 18, 1906, the auditing committee of Fulton council examined the secretary's account showing the receipt of the assessments for June which had been paid in after the 5th day of July; among others was the following item: "July 11, Mrs. M. Wood, June, '06, 40 cts."  This audit included four other assessments received on the same day and two received on July 9. All these items were audited and found correct by the committee.

It is claimed by the plaintiff that for a long time it had been the custom of the secretary of the local council to receive assessments at any time down to about the 12th of the next succeeding month after they were payable, without regard to the payments being made before or after the 5th of the month, and without any application or health certificate being required; and that thereby Mrs. Wood was induced to believe that such assessments would be received at any time before remittance was made to the supreme secretary.  A summary of the by-laws material to the issues and the contentions of the respective parties was given to the jury in an instruction, as follows:

"(3) Said monthly payment of forty cents was due

and payable on the first day of each and every month during the life of said Marinda Wood, but could be paid at any time up to midnight of the last day of the month. According to said certificate and constitution and by-laws, if any monthly payment be not paid on or before midnight on the last day of the month for which it was payable, then the insured would stand suspended without any action on the part of the defendant, and said certificate would, by such failure to pay, become null and void, unless such member should become reinstated as provided by the by-laws of the defendant company. Under the laws of the defendant a suspended member can be reinstated as follows: (a) By payment of the monthly payment the member has failed to pay on or before the 5th day of the following month, together with the pending or current payment then due; provided, such suspended member be in good health at the time of making such payment. (b) If said suspended member fails to make such payment as above mentioned on or before the 5th day of the following month, then in order to be reinstated within thirty days after suspension said member would be required to make a written application for reinstatement, and also a written health certificate attested by the secretary of the local council, and pay all monthly payments he or she failed to pay, together with the pending or current monthly payment then due; but in order for such payments to effect a reinstatement the suspended member must be in good health at the time such payments were made. But you are instructed that notwithstanding the terms and provisions of said certificate, and the provisions of said constitution and by-laws, if you believe from a preponderance of the evidence that the defendant, by and through the officers of Fulton Council 78, by the adoption of a custom or course of conduct led and induced said Marinda Wood honestly to believe that the assessments owing by her from time to time would be received after the time specified in said constitution and by-laws, and that by reason of such custom or course of conduct, if any, she was led to neglect or fail to make the June payment, 1906, until July 11, 1906, then the defendant is estopped from asserting a forfeiture by reason of her failure to make such payment at an earlier date. If you believe from a preponderance of the evidence that the defendant, by and through the local officers of said council at Fulton, by

the adoption of a custom or course of conduct led said Marinda Wood honestly to believe that the assessments owing by her from time to time would be received after the time specified in the constitution and by-laws, and that the secretary of said Fulton Council at the time she paid said assessment for June, 1906, on July 11, 1906, knew that she was sick, and with that knowledge accepted said payment and sent the payment in to the defendant, and that the defendant retained the same, and never tendered the same back to the plaintiff or to said Marinda Wood, then the defendant is estopped to declare or assert a forfeiture on said certificate, and your verdict should be for the plaintiff."

This instruction, so far as it relates to the custom and course of conduct of the council, follows the rule announced in *Foresters v. Hollis*, 70 Kan. 71, 78 Pac. 160, and fairly presented to the jury the pivotal question in the case. The local secretary, in receiving and forwarding assessments, was the agent of the defendant order, and not of the member. (*Pyramids v. Drake*, 66 Kan. 538, 72 Pac. 239.)

The jury returned a general verdict for the plaintiff, and thereby found for the plaintiff every material fact in issue necessary to support the verdict. This custom, having been pleaded, was one of the principal issues tried. The evidence was amply sufficient, showing that practically during the entire existence of the local council it had been the custom to receive dues at any time that would leave the local secretary sufficient time to place the remittance in the hands of the supreme secretary on the 15th day of the month next after they were due. His remittances were usually made on the 11th or 12th, and members then in default were often called up by telephone to make the payments then received and remitted. No health certificate or written application was required, whether payments were made before or after the 5th day of the month. This course of business included the officers and nearly all the members of the local council, and

yet the members remained and were reported as being in good standing. In short, the by-laws requiring exact payment on pain of suspension were habitually disregarded. The defendant, having thus habitually disregarded its own by-laws and by a persistent and long-continued course of business induced its members honestly to believe that they would be continued in good standing although their payments were made after the time specified, can not properly insist upon a forfeiture caused by the sanction fairly to be implied from its conduct.

The defendant contends that the evidence of the custom and course of conduct referred to was not within the issues and was erroneously allowed. The petition alleged that Mrs. Wood was at the time of her death in good standing in the order, that she had performed all the conditions of the benefit certificate on her part to be performed, and had paid all the sums of money required by the defendant according to its rules, regulations, customs and course of conduct, and that the defendant, with full knowledge of all this, had retained all the moneys so paid by her. The answer alleged the default by Mrs. Wood in the payment due June 30, 1906, as provided in the by-laws, and averred that she was not in good standing when she died, but was then in suspension. The answer further alleged "that said Local Council 78 and its secretary, nor any of its other officers, had any right, power or authority to set aside or waive any of the provisions of the constitution and laws of this defendant," and that if the local council or its officers had received money from members at any time or times except as provided in the by-laws it was without the knowledge or consent of the defendant.

The pleading of the alleged custom by the plaintiff was not in accordance with the provisions of the code requiring a statement of facts. It consisted of conclusions, but it was not challenged by motion or otherwise. On the contrary, the defendant treated it as alleging a

waiver, and in turn pleaded that the local council and its officers had no authority so to waive the rules of the order. The issue of waiver by custom thus imperfectly tendered by the plaintiff and fully and clearly met by the defendant was the principal issue tried—in fact, it was the only issue about which there was any real contention. The defendant appears to have been fully prepared to try this issue. Its secretary, who is its principal administrative and accounting officer, and the officers and many members of the local council were in attendance, and the records and files of both the supreme and local councils were produced. If prejudiced by an insufficient allegation of the facts concerning the custom pleaded the defendant should have moved for a more definite statement. (*Mitchell v. Milhoan,* 11 Kan. 617.) Not having done so, the question of the adoption of the alleged custom thus presented was fully tried upon the merits. The defendant can not justly complain of the insufficiency of the petition to present an issue in which it thus voluntarily joined.

Decisions of this court relating in some measure to the principal question here considered are: *Cobb v. Ins. Co. of N. A.,* 11 Kan. 93; *Modern Woodmen v. Jameson,* 49 Kan. 677, 31 Pac. 733; *Benefit Association v. Swenson,* 49 Kan. 449, 30 Pac. 405; *Assurance Co. v. Bradford,* 60 Kan. 82, 55 Pac. 335; *Modern Woodmen v. Breckenridge,* 75 Kan. 373, 89 Pac. 661, 10 L. R. A., n. s., 136; *United Workmen v. Smith,* 76 Kan. 509, 92 Pac. 710.

Other alleged errors argued by the defendant relate to the giving and refusal of instructions concerning forfeiture, custom, and waiver. The instructions requested, so far as they were in harmony with the decisions of this court and the views expressed in this opinion, were fairly included in those given, which, so far as they are criticized in the brief, are approved.

The judgment is affirmed.