CORA DOBSON, *Appellant,* v. THE TRIPLE TIE BENEFIT ASSOCIATION, *Appellee.*

No. 17,928.

SYLLABUS BY THE COURT.

BENEFIT ASSOCIATION — *Nonpayment of Dues — Forfeiture — No Waiver.* Ordinarily if a benefit association receives and retains dues and assessments paid by a member after he is in default and subject to suspension and forfeiture, and leads him to believe that he is still a member in good standing, it is estopped to insist on a forfeiture of membership, but on the testimony in the present case it is held that there was a forfeiture of benefits by reason of the nonpayment of dues by the member and that there was no waiver of such forfeiture.

Appeal from Barber district court. Opinion filed February 8, 1913. Affirmed.

*A. M. Appleget,* of·Woodward, Okla., and *G. M. Martin,* of Medicine Lodge, for the appellant.

*Dawes & Miller,* of Clay Center, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to enforce the payment of insurance on the life of John Dobson, the deceased husband of the appellant. Dobson had become a member.of the Triple Tie Benefit Association in 1902, holding his membership in the local council of the association at Kiowa, Kan., and for some time prior to his death on December 25, 1908, he had served as local secretary of the council. The rules and by-laws of the association provided for the prompt payment of the monthly dues and assessments, and they further provided that if such monthly dues and assessments were not paid by the last day of the month the member so failing to pay promptly should thereby be suspended. The by-laws also provided that a report

45—88 KAN.

should be made by the local secretary on a certain day of the month, and on failure to receive that report it should become the duty of the supreme secretary of the association to notify the officers of the association that the local council had accordingly been suspended, and on a further delay it should become the duty of the supreme secretary to publish the suspension of the council in the official organ of the association. While acting as local secretary Dobson collected money from members which he failed to promptly remit to the home office, as he was required to do, although repeated demands for payment were made upon him. Considerable of the correspondence relating to the forwarding of the dues paid to him as local secretary by other members of the local council was offered in evidence. It was claimed that Dobson became delinquent in his dues after October 1, 1908, and that under the by-laws his certificate lapsed on the last day of that month, and in one of the letters sent to him he was notified that he had been suspended. On the other side it was contended that if there was a default in the payment of dues it was waived by the association in the acceptance of money remitted by Dobson on November 27, 1908, and that by retaining the money it was estopped to declare the certificate invalid. Upon all the testimony the trial court found in favor of the association, and upon this appeal the question is principally one of fact, whether Dobson was in good standing as a member when he died, of if there was a waiver of any default made by the retention of dues subsequently paid.

If the association accepted payments of delinquent dues and assessments and led the insured to believe that he was still a member and that payments would be accepted notwithstanding the delinquency it would be estopped to claim a forfeiture of membership. (*Foresters v. Hollis*, 70 Kan. 71, 78 Pac. 160; *Benefit Association v. Wood*, 78 Kan. 812, 98 Pac. 219; *Mosiman v. Benefit Association*, 82 Kan. 670, 109 Pac. 413.)

The testimony tends to show that Dobson was delinquent as to dues which had accrued for the months of October and November prior to his death. The contention is that a payment of $5.25 made on December 7, 1908, was accepted by the supreme secretary and that it operated to discharge Dobson's obligation for unpaid dues. It appears that a payment of that amount was made at the time, but the testimony tends to show that it was not remitted in payment of his dues, but to pay the dues of other members which he had collected as local secretary before that time, and which was not sent until letters of the most urgent kind had been written to him. It is also contended that an excess payment of $2.40 was made in the preceding September which the supreme secretary retained and if Dobson was credited with that amount there could be no forfeiture. There is testimony, however, that this amount was not remitted in payment of his own dues but was an excess payment made in behalf of John Piper. In settling for the dues collected by Dobson from other members it was found that he still owed $7.65, and it appears that the $2.40 excess payment for Piper was deducted from the $7.65, leaving $5.25, the amount of the money order remitted to pay the dues which Dobson had collected from others as local secretary. There was some confusion in the testimony as to the payment of dues which he received as secretary and those due from him as a member, but we find sufficient testimony to support the ruling of the court that he was delinquent in the payment of his own dues at the time of his death; and further, that there was no waiver of the delinquency by the association nor any conduct which estopped it or its officers from insisting on a forfeiture of membership for noncompliance with the by-laws.

The judgment of the district court will be affirmed.