No. 21,141.

HALIA F. ALLEN, *Appellee*, v. THE NATIONAL COUNCIL OF THE KNIGHTS AND LADIES OF SECURITY, *Appellant*.

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*Suspension—Reinstatement—Acceptance of Back Dues—Evidence of Custom.* In an action upon a fraternal benefit certificate where the defense was that the assured had been suspended for nonpayment of dues and had not been legally reinstated at the time of her death, it is held, it was not error to admit evidence of a custom of the local officers of the defendant to accept dues and assessments from members who were delinquent and to reinstate them.

2. SAME—*Financier of Local Lodge—Agent of Insurer—Void By-law.* Instructions are approved which charged that the acts of the officers of the local lodge, although unauthorized in the first instance, if ratified with the knowledge of the superior officers having authority, amount to a waiver of any right or forfeiture then existing in favor of the society and against the member; that notice given to the officers of the local lodge is notice to the national council; that in receiving payments of dues and assessments the local financier was, in fact and in law, an agent of the defendant and not of the member, and that a by-law making the financier of the subordinate lodge the agent of the members, is void.

3. SAME—*Payment of Back Dues—Warranty of Good Health—Instruction.* By reason of a special finding that at the time she was reinstated the member was not in bad health, it is held, that an instruction respecting the provision of the by-laws that payment of back dues and assessments constitute a warranty that the member's health is good, could not have prejudiced the defendant and became immaterial.

4. SAME—*Effect of Acceptance and Retention of Dues after Suspension.* After accepting from the beneficiary the dues and assessments for the months of December and January, and retaining them until after the death of the assured, it was too late for the defendant to question the authority of the beneficiary to make the payments.

5. SAME—*Verdict—Judgment—Interest.* Where the jury return a verdict in plaintiff's favor for the amount of a benefit certificate with interest at six per cent, and the court without having the verdict corrected, renders judgment for the amount with six per cent from the date of the assured's death, *held,* there was no error or irregularity of which the defendant can complain.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed December 8, 1917. Affirmed.

*S. C. Westcott,* of Galena, and *James P. Mead,* of Joplin, Mo., for the appellant.

*E. B. Morgan,* of Galena, and *Don H. Elleman,* of Columbus, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The defendant appeals from a judgment against it in an action upon a fraternal benefit certificate issued to Ida W. Estep, who became a member of the order on August 5, 1912. She died on March 11, 1916. The plaintiff is her sister, who was named as beneficiary. In addition to a general denial, the answer alleged that on January 1, 1916, Mrs. Estep was suspended for nonpayment of dues for the previous month of December, and that she remained suspended until January 31, 1916, when there was an attempt by her sister, the plaintiff, to reinstate her by paying the delinquent dues and assessments. The answer pleaded specially certain laws of the order which provide for the reinstatement of a suspended member on the express condition that the member is in good health at the time payments are made with the view of reinstatement, and declaring that the payment of dues and assessments for reinstatement shall be a warranty by the member that he is in good health at the time of payment; also a provision that the national council shall not be bound by the acceptance of arrears of assessments and dues from suspended members who are not entitled to reinstatement in accordance with the laws of the order, and that "the retention by the financier," or by the defendant society "of assessments and dues paid by members or for them, with a view to reinstatement other than as provided in the laws of the order either before or after death, shall not

9—102 Kan.

constitute a waiver of any provisions of these laws." The answer also pleaded a law of the order to the effect that no officer of the society, national or local, is authorized to waive any provisions of the defendant's by-laws relating to the contract between the member and the society, and a further provision that a subordinate council and its officers are the agents of its members in the reinstatement of members, and the collection and transmission of all assessments to the national council.

With their general verdict the jury returned answers to special questions submitted by the plaintiff as follows: .

"Q. Was the plaintiff in good health at the time of her reinstatement on January 31, 1916? A. No.

"Q. If you answer question No. 1 'No' state what disease, ailment or sickness she was afflicted with? A. Cold and la grippe after effects of child birth.

"Q. Was the December, 1915, assessment paid to the financier of Galena Council No. 61, on or about January 31, 1916? A. Yes.

"Q. At the time this assessment was paid did said financier know or has she been told of the fact that Mrs. Estep was in bad health? A. Yes.

. "Q. Did said financier make any inquiry about the health of Mrs. Estep at the time of receiving said payment on January 31, 1916? A. Yes.

"Q. Did said financier in February, 1916, remit to the National Council the money paid on behalf of Mrs. Estep with a report showing the payment of said assessments and the reinstatement of Mrs. Estep? A. Yes.

"Q. Did said National Council retain the amount so paid without requiring or requesting any proof of her condition of health, until after her death? A. Yes.

"Q. Had the financier of Galena Council No. 61 adopted any custom or course of conduct in reference to accepting payments which were overdue and reinstating the members without any inquiry as to their condition of health? And if so what was said custom or course of conduct? Answer fully. A. Yes. Simply by accepting back dues.

"Q. Did Ida W. Estep contract the ailment or disease from which she died before or after January 31, 1916? A. After.

"Q. Would Ida W. Estep have died from the ailment she had prior to January 31, 1916, had it not been for the birth of her baby on January. 20th, and later taking cold and getting her feet wet? A. Don't know."

Among the answers to questions submitted by the defendant are the following:

"Q. Was not the said Ida W. Estep first visited by Dr. Sharp of Neodesha, Kansas, on the 19th day of January, 1916? A. Yes.

Allen v. Knights and Ladies.

"Q. Was not the said Ida W. Estep suffering with some lung ailment when the doctor visited her first? A. No.

"Q. Was Ida W. Estep in good health on the 19th day of January, 1916? A. Yes, with the exception of pregnancy.

"Q. Did not the said Ida W. Estep continue to be in bad health from the 19th day of January, 1916, to the time of her death? A. Yes.

"Q. Was not her health bad, regardless of her pregnancy? A. No."

A witness for plaintiff was permitted to testify that on January 31, 1916, when she paid the dues and assessments on Mrs. Estep's policy for the month of December, she stated to the local financier that Mrs. Estep was not feeling well. There was certainly no error in receiving the testimony for what it was worth; whether it was sufficient upon which to support the finding of the jury to the effect that the financier was informed that Mrs. Estep was in bad health is another matter. The main contention of the defendant, raised by a demurrer to the evidence, objections to instructions given and refused, objections to certain special questions, a motion to set aside answers to certain questions, and the motion for a new trial, may be summarized as follows: It is claimed the testimony shows, and the jury found, that Ida W. Estep was in bad health from and after the 19th of January, 1916, and that this being so, the provisions of the constitution and laws of the order set out in the answer established a complete defense to the action. In the first place, the testimony did not show, and the jury, as we construe their answers to the special questions, have not found that Mrs. Estep was in bad health from and after the 19th day of January, 1916. There are some slight inconsistencies in the language used by the jury in the answers to the numerous questions submitted; but construing all of the answers together, it is manifest to our minds that the jury believed from the evidence that on the 31st day of January, 1916, when she was reinstated, Mrs. Estep was not in bad health, except as the jury seem to have regarded pregnancy as constituting, at least, not good health. They find she contracted the ailment or disease from which she died after January 31, 1916, so that it is not very important whether her health was good or bad on the 19th of January, if her condition at the time she was reinstated, on January 31, had nothing to do with her death. In answer to an interrogatory submitted by the de-

fendant the jury say that Mrs. Estep's health was not bad except on account of her pregnancy.

In the second place, the provisions of the constitution and laws of the order pleaded in the answer did not establish a complete defense to the action, because, as has been often decided, many of the provisions relied upon by the defendant may be waived, and some of them are void, and others will not be given the construction contended for by the defendant. These matters will presently be referred to in connection with the contention respecting error in the instructions.

It was not error to admit evidence of a custom of the local officers of the defendant to accept dues and assessments from members who are delinquent and to reinstate them. (*Foresters v. Hollis*, 70 Kan. 71, 78 Pac. 160, and authorities cited in the opinion; *Benefit Association v. Wood*, 78 Kan. 812, 817, 98 Pac. 219.) Besides, the constitution and by-laws of the defendant expressly recognize this practice and custom, and attempt to avoid the effect of the acceptance through the local financier of past dues and assessments, by declaring that the retention of these dues by the head financier or by the order shall not constitute a waiver of any provision of the laws; that no officer of the society nor any local officer or member may bind the company by waiving any provisions of the by-laws which relate to the contract between the member and the society, and by further declaring that the subordinate council and its officers are the agents of its members in the reinstatement of members, and in the collection and transmission of all assessments to the national council.

The court very properly instructed the jury that the acts of the officers of the local lodge, although unauthorized in the first instance, if ratified with the knowledge of the superior officers having authority, amount to a waiver of any right or forfeiture then existing in favor of the society and against the member; that notice given to the officers of the local lodge is imputed to the national council; that the by-laws making the financier of the subordinate lodge the agent of the members is void; and that such financier is the agent of the defendant society in receiving dues and assessments. These instructions state the law as declared in former decisions. In receiving payments of dues and assessments the local financier was,

in fact and in law, the agent of the defendant, and not of the member. (*Pyramids v. Drake,* 66 Kan. 538, 72 Pac. 239; *Fraternal Aid Association v. Powers,* 67 Kan. 420, 73 Pac. 65; *Benefit Association v. Wood,* supra; *Mayes v. Knights & Ladies of Security,* 92 Kan. 841, 846, 142 Pac. 290.)   With respect to the provision of the by-laws that the payment of back dues and assessments constitute a warranty on the part of the member that his health is good at the time, the court charged that before the jury could find from the evidence that there was a breach of this warranty, by reason of the bad health of the member, the nature or degree of such bad health must be material; that while there must be no evasion or fraud or suppression of material facts, and must be absolute good faith, yet where the evidence shows there has been no evasion or fraud nor purpose to conceal any fact which the member would naturally under the circumstances suppose was required to be stated by her, or on her behalf, and where the society has not been prejudiced or injured in any manner, such defense cannot be maintained.   Most of the language of this instruction is a paraphrase of language used in the opinion in the recent case of *Farragher v. Knights & Ladies,* 98 Kan. 601, 605, 159 Pac. 3.   Whether the instruction was proper in this case, it cannot be said that it prejudiced the defendant, because of the special finding that at the time she was reinstated the member was not in bad health.

The provision that no officer of a local lodge may waive any provision of the by-laws has no application to waiver by operation of law resulting from subsequent acts of the local officer. (*Modern Woodmen v. Breckenridge,* 75 Kan. 373, 379, 89 Pac. 661.)   Respecting the attitude of the courts in discouraging forfeitures based upon laws and regulations of semibenevolent associations, see case last cited.

After accepting from the beneficiary the dues and assessments for the months of December and January on Mrs. Estep's certificate, and retaining them until after her death, it was too late for defendant to question the authority of the beneficiary to make the payments, if indeed it could at any time.   There was very little conflict in the testimony as to the facts, the material findings appear to be sustained by evidence; and the legal propositions relied upon by the defendant, while not wholly

unsupported by authority elsewhere, are no longer open questions in this state.

Finally, it is insisted there was error in the manner in which the judgment was rendered. The verdict assessed the amount due the plaintiff at $953, with interest at 6 per cent. The petition had asked for this sum with interest at 6 per cent from March 11, 1916. The court rendered judgment for $953, with 6 per cent from May 11, 1916, to the date of the judgment, making a total of $974.94. The defendant objected to the allowance of interest. The court might have directed the jury to correct their verdict by computing the interest and adding it to the amount found due, or the court might have computed the interest and prepared another form of verdict with the proper amount and directed the foreman of the jury to sign it. It cannot be doubted that plaintiff was entitled to interest on the amount of the certificate from the date of the death of the assured. The irregularity in the manner of rendering the judgment did not affect the substantial rights of the defendant.

The judgment is affirmed.