No. 23,912.

SALLIE KEETON, *Appellee*, v. GRAND LODGE, ANCIENT ORDER OF
UNITED WORKMEN, *Appellant*.

SYLLABUS BY THE COURT.

1. BENEFIT INSURANCE—*Member Suspended—Application for Reinstatement—No False Statement in Application.* Under the evidence and findings of the court it is held that a former member of a fraternal insurance order who had been suspended and had applied for reinstatement did not make a false statement as to his bodily health in the application certificate presented by him to the order.

2. SAME—*Delinquent Assessments—Member Reinstated—Entitled to Rights in Beneficiary Fund.* The payment of delinquent assessments and dues by a suspended member of a fraternal insurance order and a vote of the lodge reinstating him conditionally, together with the retention of the payments, the receipt and retention of subsequent assessments and dues, it is held precludes the order from asserting that the reinstatement, although irregular, was not effective, or that the member had lost his rights in the beneficiary fund.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. Mc-CAMISH, judge. Opinion filed October 7, 1922. Affirmed.

*Edgar Bennett*, of Washington, for the appellant.

*C. A. Smart*, of Lawrence, and *A. N. Casten*, of Quenemo, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action Sallie Keeton asked and obtained a recovery on a beneficiary certificate issued by the Ancient Order of United Workmen upon the life of her husband, Will D. Keeton, who died on August 30, 1921. In its appeal the defendant insists that Keeton was not a member of the order when he died, having been suspended for nonpayment of assessments and that he had never been legally reinstated. A further contention is that when he applied for reinstatement and paid certain assessments he falsely certified that he was then in a good state of bodily health when in fact he was not.

As to the suspension and reinstatement, the trial court found that the assessments for February, March and April were delinquent, but that on May 21, 1915, he paid the financier of the lodge $6.80, to cover the delinquent assessments and dues, for which that officer issued a receipt reciting that if reinstatement should be refused the

moneys would be refunded by the financier.  The matter of rein-statement was brought before the local lodge on June 24, and the record discloses that a motion to reinstate was made and carried by the order with the proviso that it should be accepted by the grand lodge and not conflict with the constitution.  A motion was made and carried to refund to Mrs. Keeton the $6.80, but at the same meeting the action was reversed and the motion was adopted to re-tain the money until a communication from the grand lodge in re-gard to the same was received.  On May 29 Keeton paid to the financier another assessment of $1.45 and took his receipt therefor. On June 25, 1915, Mrs. Keeton called at the office of the financier to make a payment, and not finding him in she inquired of the wife of the financier as to the payment and was directed to pay the same to the clerk of the financier, which was done, and a receipt issued which recited that it was for lodge dues to the A. O. U. W.  Two subsequent tenders of assessments were made, in July and August, which the financier refused to accept.  In July, 1915, a motion was entered in the record of the local lodge declaring that the reinstatement of Keeton was illegal.  This followed a postal card notice to Keeton, signed by the recorder of the local lodge, advising that the grand lodge had not approved his reinstatement.  However, no part of the money paid by Keeton or by his wife for him was ever returned to Keeton in his lifetime or to his widow since his death, and no tender thereof has ever been made.  The money has been retained, but whether it is in the possession of the local lodge or the grand lodge was not shown.  In a report issued by the auditing committee of the local lodge for June, 1915, it was not shown that Keeton was in arrears for dues and assessments.  The monthly publication of the order, which is sent to members only and is revised once every six months, dropping out those who have been suspended and adding those who have been initiated, was sent to Keeton's home address up until the time of his death.  On May 29 an inquest was held as to the mental condition of Keeton and he was then adjudged to be insane and a fit subject to be sent to the hospital for the insane, and about two months later his death occurred.  There was no evidence to sustain the claim that Keeton was not in good bodily condition when he signed the health certificate prior to his reinstatement ex-cept the report of the commission which examined him at the time of the inquest.  This commission was composed of two physicians, one of whom, Dr. Candler, was the physician of the order who had

examined Keeton when he was admitted into the order. That report contained conflicting statements, one of which was a statement that he was afflicted with syphilis. In another part of the report the commission stated that the usual conditions of the bodily health of Keeton were good. When Keeton was examined for admission to the order the previous December, the question of whether he had a venereal disease was a matter of inquiry, and Dr. Candler recommended him as free from disease and a fit person for membership. There was testimony tending to show that he did not have the disease mentioned when he signed the health certificate for reinstatement, and upon the whole evidence, which is deemed to be sufficient, the court found that he was in good bodily health at the time of reinstatement. The contention, therefore, that the reinstatement is void because of fraud in the application for reinstatement and of false representations made by Keeton at that time in the certificate cannot be sustained.

There is a contention that Keeton had been suspended from the order and never had in fact been reinstated. There was a recognized delinquency in the payment of assessments by Keeton which operated automatically as a suspension, but the local lodge, which had authority to reinstate suspended members, accepted the delinquent dues and assessments and voted in favor of reinstatement. It is true that the lodge at a later time entered a declaration on the record to the effect that the former action was illegal, but the retention of the dues and assessments is a more effective declaration that the reinstatement is valid. While there was a condition attached to the reinstatement, and later a declaration that the action previously taken reinstating Keeton was illegal, the acceptance and retention thereafter of payments precludes the order from insisting that the reinstatement was invalid, and that Keeton had lost his rights in the beneficiary fund. In view of the recital in the receipt for the delinquent assessments that the money would be refunded if reinstatement was refused, the retention of the money was an assurance to the member that reinstatement had not been refused, and the acceptance and retention of fees and assessments thereafter paid tended to confirm that assurance.

The authority of the financier to accept payments is questioned, but the court found that this officer pursued the same course and handled the fees and assessments paid by Keeton in the same manner as had been generally followed in other cases of a like character.

Having collected the assessments and dues both before and after the vote for reinstatement and having retained them ever since, thereby treating Keeton as a member, the order is estopped to deny his membership and rights in the beneficiary fund. Authorities supporting this view in some measure are *Foresters v. Hollis,* 70 Kan. 71, 78 Pac. 160; *United Workmen v. Smith,* 76 Kan. 509, 92 Pac. 710; *Benefit Association v. Wood,* 78 Kan. 812, 98 Pac. 219; *Allen v. Knights and Ladies,* 102 Kan. 128, 169 Pac. 569; *Ellis v. Fraternal Aid Union,* 108 Kan. 819, 197 Pac. 189.

On the record as presented it must be held that the recovery was justified, and therefore the judgment of the district court is affirmed.