THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF THE STATE OF KANSAS v. LEVINA SMITH.

No. 15,022.   (92 Pac. 710.)

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*Payment of Dues and Assessments—Forfeiture—Construction of By-laws.* Where there is inconsistency in the provisions of the by-laws of a benefit society as to the payment of dues and assessments by its members, and a question arises whether there has been a forfeiture of benefits because of the non-payment of dues and assessments, the court will, where interpretation is possible, construe the by-laws so as to give the insured the benefit of the provisions favorable to him.

2. ——— *Waiver of a Forfeiture.* The receipt and retention of money paid to the benefit society by one of its members on an overdue assessment is ordinarily sufficient to waive a forfeiture arising from the failure to pay the assessment when due.

3. ——— *Same.* The demand, receipt and retention by the benefit society of an assessment on which the member is not in default with one which was overdue waives the forfeiture growing out of the delay of non-payment.

Error from Republic district court; WILLIAM T. DILLON, judge. Opinion filed November 9, 1907. Affirmed.

*John T. Sims,* for plaintiff in error; *L. C. True,* of counsel.

*Hugh Alexander,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: On June 14, 1904, Clark Smith became a member of the Ancient Order of United Workmen, in the Courtland lodge, and there was then issued to him a benefit certificate, in which his mother was named as beneficiary. At that time Smith paid $1.10 to the financier of the lodge, fifty cents of which was paid as a fee for the benefit certificate, and the remaining sixty cents was designated as a sum equal to one assessment; and whether this should be treated as a payment of an assessment is a matter of dispute between the parties. After receiving the beneficiary certificate Smith paid all the assessments, as they were made, until the April, 1905, assessment of sixty cents, which was due and payable on April 28, but no payment was then made. The quarterly dues, which were one dollar, payable in advance, had been paid as they fell due, except for the quarter beginning in April, 1905. On or about May 12, 1905, the financier of Courtland lodge sent Smith the following written letter and notice:

"COURTLAND, KAN.
"*Mr. Clark Smith, Formoso, Kan.:*

"DEAR SIR AND BROTHER—I hereby notify you that you are suspended from the A. O. U. W. for non-payment of April assessment #4 and dues. We have one assessment for May. So in order for you to be reinstated again you will have to pay assessments Nos. 4 and 5 and $1 dues for April. The total amount is $2.20. Please send $2.20 to me at once and be reinstated.          Yours truly,
                    C. E. HALBERG, *Fin.*"

In response to this notice, and on May 15, 1905, Smith sent the amount demanded and paid the same. to the financier, who accepted it as payment of the delinquent assessment and dues, and this money was still in the hands of the order when the action was brought. —December 15, 1906.   Smith died on May 17, 1905. The order refused to pay the insurance, and hence this. action was brought by the beneficiary to recover it.

The refusal to pay was based on the failure of the insured to pay dues and assessments at the appointed times, which, it is claimed, operated to forfeit all rights. which the insured or his beneficiary held or could claim under the certificate.   It is not denied that all Smith owed under the insurance contract had been paid before his death, but the claim is that the last assessment and the last quarterly dues were not paid in time.   In behalf of the beneficiary it is claimed that there was in fact no default as to the April assessment, and that while the quarterly dues which should have been paid on April 28 were not paid until two weeks later the by-laws provide that a member or his beneficiary shall not be barred from the benefits and privileges for non-payment of dues until there has been a suspension for a period of six months.   It is further contended that if there had been default, as is claimed by the order, it had waived a forfeiture by asking for the delinquent payments and receiving them upon the declaration that if payment was made Smith would be reinstated and afterward holding the money thus paid from May 14, 1905, until after the action was brought —December 15, 1906.

First, as to the non-payment of the assessments:  It is conceded that the April assessment was not paid. before April 28, unless the sixty cents (the amount of. one assessment) which was collected from Smith when he joined the order may be treated as the payment of an assessment.   The dispute grows out of confusion

and conflict in the language of the by-laws of the order relating to the subject. In one section it is provided:

"The beneficiary fund shall be composed: First, of a sum equal to the amount of one assessment, to be paid by each and every member as a part of the admission fees; and, second, from the proceeds of the assessments made from time to time upon the members as hereinafter provided."

In another section specifically providing what assessments shall be due and payable from members it is provided, among other things, that the member shall pay "the amount of one assessment according to his class and rate as herein specified as and for a regular assessment on each calendar month, commencing with the first calendar month after the member receives the workman degree."

It is therefore contended and the trial court held that the first assessment of sixty cents, which was paid on June 14, 1904, should have been credited to July instead of June, under the provision that assessments should commence with the first calendar month after the insured became a member of the order. There is an inconsistency in these by-laws. According to the one last mentioned Smith made an excess payment. How should these by-laws be interpreted in a proceeding where a forfeiture is insisted upon? It is well decided that forfeitures are odious and will not be enforced in doubtful cases or where they are not definitely provided for in the contract, and that where there is inconsistency in the by-laws and an interpretation is permissible the court will so construe them as to give the insured the benefit of the provisions favorable to him. (*Pyramids v. Drake*, 66 Kan. 538, 72 Pac. 239; *Insurance Co. v. Milling Co.*, 69 Kan. 114, 76 Pac. 423; *United Workmen v. Haddock*, 72 Kan. 35, 82 Pac. 583.)

So construed, there was an excess payment of one assessment, and when this is credited to the insured, as it should have been, there was no default in assessments, and the one which the order demanded and

received for April, 1905, was not due from Smith. The trial court correctly held that this excess payment should be credited on the subsequently accruing assessments, and if this be done there was no default or ground for forfeiture on that account. (*Fraternal Aid Association v. Powers,* 67 Kan. 420, 73 Pac. 65; *Benefit Association v. Wood,* 73 Kan. 124, 84 Pac. 565.)

In respect to dues the by-laws are not free from doubt. There is a provision that the failure to pay dues when due shall disqualify the member from voting or holding office in the lodge, and shall operate to suspend the benefit certificate of such member, and, besides, it provides for a method of reinstatement. This is followed by a provision that "whenever the beneficiary certificate of a member has been suspended for non-payment of dues and shall remain so suspended for a period of six months such member shall stand suspended from benefits and privileges of the order, and his beneficiaries thereby lose all right to any portion of the beneficiary fund." Now, it will be observed that the beneficiary certificate was not suspended for six months, but, as we have seen, the suspension, if there was one, was only for a period of about two weeks. There are other by-laws somewhat inconsistent with those mentioned, but these provisions are fairly open to the interpretation that the beneficiary shall not be deprived of benefits or lose his rights to the beneficiary fund except where there has been a six months' suspension. Especially should this be so where the insured paid the delinquent dues upon request and did everything which devolved upon him to do.

Aside from these considerations, and assuming that there was an actual default both as to assessments and dues, and that there was no reinstatement as the by-laws require, the order should be held to have waived its right to insist upon a forfeiture. Its acts

33—76 KAN.

and conduct in respect to this certificate after April 28 preclude it from making the defense of forfeiture. The financier, who represented the order, in effect said to the insured: "You are delinquent and have been suspended. Now, send $2.20 to me at once and be reinstated." The proposition, as will be observed, is not that the insured should pay this money, and then, if the lodge were willing, be reinstated, but the natural import of the language used is that the payment of the amount would accomplish reinstatement and put him again in good standing in the order. The money was received by the representative of the order, was kept for seven months, and was still retained when this action was brought.

The receipt of an assessment and its retention is ordinarily regarded as a waiver of a ground of forfeiture. In *Insurance Co. v. Eggleston,* 96 U. S. 572, 24 L. Ed. 841, it was said:

"Courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of the insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract." (Page 577.)

(See, also, *Bailey et al. v. The Mutual Benefit Association,* 71 Iowa, 689, 27 N. W. 770; *Warnebold v. Grand Lodge,* 83 Iowa, 23, 48 N. W. 1069; *Dennis v. M. B. Association,* 120 N. Y. 496, 24 N. E. 843, 9 L. R. A. 189, 17 Am. St. Rep. 660; *Lord v. National Protective Society,* 129 Mich. 335, 88 N. W. 876; *Titus v. Glens Falls Insurance Company,* 81 N. Y. 410; *Grand Lodge A. O. U. W. v. Lachmann,* 199 Ill. 140, 64 N. E. 1022; *Supreme Tribe of Ben Hur v. Hall,* 24 Ind. App. 316, 56 N. E. 780, 79 Am. St. Rep. 262.)

Although the by-laws of the order provided for a

vote of the lodge before reinstatement of a party, the payment of the money was all that was required of the insured. He had done his part and had in effect been told that no more was necessary. No objection could have been made to reinstatement, as he was conceded to be a young man of good character and to measure up to the requirements of the order. Besides, the financier testified that it was the practice in such cases to reinstate at the regular meeting following the report of payment. In this case the next lodge meeting after payment occurred two hours after his death, and hence reinstatement became an impossibility. However, to show how the lodge regarded the insured and its obligation to him as a member, it met and voted to contribute toward the funeral expenses, and this evidence was admissible to show the attitude of the order toward him. Again, assuming that the assessment for April was in default, it is conceded that he was not delinquent on the May assessment, and could not have been until the 28th day of that month. The representative of the order solicited and accepted the payment of the May assessment with the April one, claimed to be overdue. In that way he was treated as a member of the order, and in effect was told that notwithstanding the previous delinquencies he was still liable to the obligations of membership. The collection of the May assessment (on which he was not in default) as if he were in good standing is strong evidence tending to show a waiver of any past delinquencies of which the order had knowledge. (*Modern Woodmen v. Jameson*, 48 Kan. 718, 30 Pac. 460; *Tobin v. The Western Mutual Aid Society*, 72 Iowa, 261, 33 N. W. 663; *Rice v. New England Mutual Aid Society*, 146 Mass. 248, 15 N. E. 624; *Metropolitan Accident Ass. v. Windover*, 137 Ill. 417, 432, 27 N. E. 538; *Elmer v. Mutual Benefit Life Ass'n*, 19 N. Y. Supp. 289; *Painter v. The Industrial Life Association*, 131 Ind. 68, 30 N. E. 876; 2 Bacon, Ben. Soc. & Life Ins., 2d ed., § 431.)

No error was committed in overruling the demurrer to the petition, nor do we find any prejudicial error in the rulings on the evidence. That which has been already said answers a number of the points presented by the plaintiff in error.

Finding no material error, the judgment of the district court is affirmed.