THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF THE STATE OF KANSAS V. SYLVIA MAY CRANDALL *et al., Minors, etc.*

No. 16,043.

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*Suspension—Forfeiture—Waiver.* A member of a fraternal benefit association mailed the amount of an overdue assessment and dues to the financier of his lodge, which was received by that officer four days afterward. The officer made his report thereof, as required by the by-laws, to the lodge at its next meeting, which was held three days after the financier received the remittance. Two days before this meeting the member died. Upon the order of the lodge to return the money the financier tendered it to the mother of the beneficiaries (both being minors), and upon her refusal to take it left it with one of them, no guardian having been appointed. The by-laws provided that upon failure to pay an assessment when due the certificate of the member so in default should stand suspended without any action of the lodge or its officers, and that upon such suspension the beneficiaries should lose all right to participate in the beneficiary fund. An affirmative vote of the lodge was one of the conditions of reinstatement. *Held,* that the association is not liable to the beneficiaries under such suspended certificate when the condi-

United Workmen v. Crandall.

tions of forfeiture are not waived, and that in the circumstances stated and disclosed in the agreed statement of facts there was no waiver.

2. ——— *Construction of Contract.* The rule requiring a liberal interpretation of the by-laws of such an order in favor of the beneficiary, announced in *United Workmen v. Smith,* 76 Kan. 509, is adhered to, but this does not require or permit a strained construction or interpretation of language at variance with its obvious meaning.

Error from Cherokee district court; CORB A. MC-NEILL, judge. Opinion filed June 5, 1909. Reversed.

STATEMENT.

THIS action was tried upon an agreed statement of facts, in substance as follow: H. D. Hart became a member of a subordinate lodge of the Ancient Order of United Workmen, a fraternal benefit order, on April 16, 1895, and received a beneficiary certificate therein for $2000, payable to his wife. He paid an advance assessment of $1 at that time, which was credited to the assessment for that month or fraction thereof remaining, and continued to pay assessments made in each calendar month thereafter until May or June, 1898, when he became suspended and remained in suspension until September, 1899, when he was reinstated, paying at the time $1.45 as an advance assessment, which was credited on the assessment for that month. Afterward the beneficiary was changed and a new certificate issued, dated August 30, 1905, payable to Mr. Hart's minor children, the plaintiffs in this action. The certificate specifies that it is "to be construed and controlled by the laws of the order now in force or which may hereafter be adopted, and upon the express condition that said H. D. Hart shall in every particular while a member of the order comply with all the laws, rules and requirements thereof, and shall be in good standing at the time of his death."

On December 23, 1905, the local financier of his lodge

wrote to Hart, who was then at Santa Rosa, Cal., where he had been for a considerable time in ill health:

"According to our record of your birth you have now attained to your fortieth birthday, which advances you into class No. 5 and your assessment to $2. In January, 1906, you will pay for assessment No. 1, and $1 dues—$3."

On January 3, 1906, Hart wrote from a hospital at Santa Rosa to the secretary and financier of the local lodge referring to his sickness and inability to pay; and on February 3, 1906, he again wrote to the financier a letter, mailed February 5, 1906, enclosing a post-office money-order for $3 for the dues and assessment due January 28, 1906, which was received by the financier February 9, 1906. Mr. Hart died at Santa Rosa, February 11, 1906. The first meeting of the local lodge after the receipt of the money-order was the regular monthly meeting held on February 13. The next day the financier, by order of the lodge, obtained the money upon the order and tendered it to the plaintiffs' mother, who refused to take it, and he then laid it upon the knee of one of the plaintiffs, saying, "I have returned the $3, as my lodge directed me to do."

All dues and assessments had been paid except the payments due January 28, 1906, and Hart was in good standing down to that time. The defendant, having knowledge of the death, refused to pay the plaintiff's claim, upon the ground that Hart was not in good standing when he died and that the defendant was not liable upon the certificate.

The by-laws provided for monthly assessments, to be made not later than the 8th day and payable on the 28th day of each month, and contained the following:

"The certificate of each member who has not paid such assessment on or before the 28th day of said month shall by the fact of such non-payment stand suspended, and no action on the part of the lodge or any officer thereof shall be required as essential to such suspension."

They also provided for the reinstatement of a member suspended for non-payment of assessments, upon the payment of all assessments due or pending, and an affirmative vote of the lodge, where the member applied within three months from the suspension; but this law declared:

"Neither the payment of the money to, nor the receipt thereof by the financier, nor any other officer of the lodge, shall operate to work a reinstatement until the lodge, at a stated meeting thereof, shall have affirmatively voted thereon."

After three months and before the expiration of six months a certificate of the medical examiner and other conditions were required.     The constitution and by-laws also contained the following provisions:

"Any member whose beneficiary certificate has been suspended for a period of six months shall stand suspended from all benefits and privileges of the order. . . .     (c) When a member shall be suspended or expelled from the order, for any cause whatever, he forfeits all the rights, benefits or privileges of the order, and his beneficiary or beneficiaries lose all right to any portion of the beneficiary fund."

"The beneficiary fund shall be composed, first, of a sum equal to the amount of one assessment, to be paid by each and every member as a part of the admission fees, and, second, from the proceeds of the assessments made from time to time upon the members, as hereinafter provided."

"No liability for the payment of any money from this fund shall arise by virtue of any beneficiary certificate, or certificate of membership, or otherwise, unless the member of the order named in such certificate shall in every particular, while a member of the order, comply with all the laws, rules and requirements thereof, and shall at the time of his death be a member of said order in this jurisdiction, in good standing."

"Each applicant upon signing the application for the Workman degree shall pay to the financier the sum of fifty cents (50c) for the beneficiary certificate, and the amount of one assessment according to his class and rate as specified in section 12 of said article 2 of this

constitution, together with the fee, if any, for the Workman degree."

"There shall be due and payable, without notice, from each member of the order to the financier of the lodge of which he is a member—or, if a member holding a grand lodge card, to the grand recorder—the amount of one assessment according to his class and rate as herein specified as and for a regular assessment on each calendar month, commencing with the first calendar month after the member receives the Workman degree, or if joining by card, or reinstatement from another jurisdiction, then commencing with the first calendar month after he is elected a member of this jurisdiction, which said sum shall be due and payable on or before the 28th of the month, and shall be paid into the beneficiary fund of the lodge; and upon the failure to pay such assessment on or before the 28th day of the month the beneficiary certificate of such member shall stand suspended and all rights thereunder be forfeited. No rights under said certificate shall be restored until it has been duly reinstated by compliance by the member with the law of reinstatement stated in this article."

Similar provisions were made for the payment of quarterly dues, and for suspension upon non-payment. Another by-law provided:

"In case of the death of a member during the pendency of the collection of an assessment the deceased member shall be liable for said pending assessment, and the same must be paid before said beneficiary certificate shall be paid."

*John T. Sims,* for the plaintiff in error; *Angevine, Cubbison & Holt,* of counsel.

*Edward E. Sapp,* and *S. E. Cheeseman,* for the defendants in error.

The opinion of the court was delivered by

BENSON, J.: The only claim of error is that the judgment is not supported by the facts. It is insisted that the beneficiary certificate was suspended by the failure to pay the assessment when it became due, and that

there was no waiver of the conditions of the forfeiture consequent upon such suspension. The money-order was received by the financier and was reported by him to the lodge three days afterward—at its next stated meeting. Before that meeting or any meeting was held the certificate-holder had died. The lodge then ordered the money returned. If the previous default worked an immediate suspension, without notice and without any action of the lodge or its officers, the conclusion must follow that there was no waiver, or acceptance of the money that should be held equivalent to a reinstatement. The member is chargeable with knowledge of the by-laws, and, it must be presumed, intended that the financier should hold the money until that time, for the by-laws required him to report it to the lodge at the next stated meeting, and provided that the receipt by that or any other officer should not operate as a reinstatement until the lodge had voted affirmatively thereon.

It is contended, however, that the certificate was not suspended, because there had been in fact no default. The claim is that the advance assessment paid at initiation should have been credited on the first regular assessment made on the first day of the next calendar month, and payable on the 28th day of that month. This contention is sustained by the opinion in *United Workmen v. Smith,* 76 Kan. 509, interpreting the same by-laws. As assessments were regularly made and paid each month until the suspension in June, 1898, it follows that the payment so made on the 28th day of each month after receiving the Workman degree should have been applied on the next month's assessment, and the member was not therefore legally suspended until the assessment for July, 1898, became due. The plaintiffs make the further claim that, having thus paid one assessment more than had been properly credited, it remained in the treasury and should have been applied on the assessment called for on January 28, 1906. The

advance payment, however, having operated to keep the certificate in force for a month longer, was not available for further credit.

On reinstatement in September, 1899, another advance assessment of $1.45 was paid as upon initiation, and, the assessments for each calendar month thereafter down to January 28, 1906, having been paid, the sum of $1.45 then remained in the treasury available to apply on the assessment then called for, but was insufficient to pay such assessment. On the first day of that month the member had been advanced, as it appears, to class No. 5, under the by-laws, which were made a part of the contract, and the assessment was $2, so that if the $1.45 were credited, fifty-five cents still remained due on this assessment of January 28, 1906.

A by-law provides that the certificate shall stand suspended upon failure to pay assessments on or before the 28th day of each month, without any action of the lodge. Reinstatements within three months are provided for upon condition that all assessments are paid up and a majority of the lodge shall vote therefor. The by-laws also declare that the receipt of the money by any officer of the lodge shall not operate as a reinstatement. The further provision that a member whose beneficiary certificate has been suspended for a period of six months shall stand suspended from all benefits and privileges of the order does not obviate the effect of the suspension of benefits during the period of such suspension, clearly declared by the other provisions. Before the expiration of the six months' period of suspension a beneficiary certificate may be renewed upon reinstatement of the member; after that time it is canceled. If he be reinstated after that period, it is upon a new application and compliance with all the conditions of an original admission to membership, except as to residence and the payment of degree fees, and a new certificate is issued. Reading these provi-

sions together, it must be held that upon failure to pay assessments the beneficiary loses his right to participate in the beneficiary fund until reinstatement; after six months all rights under the suspended certificate end.

The provision with reference to suspension for nonpayment of dues is somewhat different. A vote of the lodge is not *expressly* required, although the member must comply with all the requirements for reinstatement for failure to pay assessments. It will be observed that these requirements, in terms at least, relate to conditions to be performed by the member, and not by the lodge. The same provision is made concerning the effect of the expiration of the six months' period, as in case of suspension for failure to pay assessments.

In *United Workmen v. Smith*, 76 Kan. 509, the doubtful nature of these by-laws relating to dues was referred to, and it was observed that they were open to the interpretation that the beneficiary should not be deprived of benefits until after six months' suspension, "especially . . . where the insured paid the delinquent dues upon request and did everything which devolved upon him to do." (Page 513.) The decision was placed on the ground of waiver, and it was declared:

"The receipt and retention of money paid to the benefit society by one of its members on an overdue assessment is ordinarily sufficient to waive a forfeiture arising from the failure to pay the assessment when due." (Syllabus.)

There was no waiver in this case. The financier did not call for this money after it became overdue. The order did not accept the payment or retain the money. Before the first stated meeting after the money-order had been sent to the financier the member died, and an order was made at that meeting to return the money, and all reasonable efforts were made to do so. The

fact that no person then had a legal right to receive it can not operate to the prejudice of the defendant.

The plaintiffs further insist that there could be no suspension for failure to pay dues on January 28, for the reason that credit should have been given at that date for the original advance assessment of $1 and the advance assessment made at reinstatement in September, 1899, of $1.45, amounting to $2.45, which would have paid the assessment of $2 then called for, leaving a balance of forty-five cents to be applied on the dues then demanded; that this would have paid the dues for that part of the quarter between January 28 and his death, which occurred in February; and that no more could be equitably claimed. Having found that the credit claimed for the first advanced assessment had been absorbed by keeping the certificate in force for another month after the date of the first suspension as declared by the lodge, nothing remained to apply on the dues, and the merits of this claim need not be further examined.

The rule of liberal interpretation in favor of the beneficiary, announced in the Smith case, will not be departed from. But this does not require or permit a strained construction or interpretation of language contrary to its obvious meaning. The maintenance of the beneficiary fund depends upon the faithful observance by the members of their obligations, and just rules to enforce such obligations, which are made part of the contract, if not waived, must be enforced.

We are constrained to hold that upon the agreed statement of facts the certificate was suspended when the member died; that there was no waiver of the conditions; and that the defendant is not liable. The judgment is reversed and the cause remanded, with directions to enter judgment for the defendant upon the agreed statement of facts.