No. 18,976.

LILLIE JENKINS, *Appellee*, V. THE ANCIENT ORDER OF
UNITED WORKMEN OF KANSAS, *Appellant*.

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE — *Nonpayment of Dues — Suspension
—No Waiver of Forfeiture.* Under the by-laws of a fraternal
benefit order the failure of a member to pay dues and as-
sessments at fixed times operates as a suspension of the mem-
ber, and if he dies during such suspension his beneficiary is
not entitled to share in the beneficiary fund. Another pro-
vision is that a member may be reinstated by paying the de-
linquent dues and assessments and upon an affirmative vote
of the local lodge. A member of the order failed to pay an
assessment when it was due, but thirteen days later sent a
check, which was delayed in transmission and was received
by the officer of the order nineteen days after suspension and
on the same day that the member died. No action towards
reinstatement was ever taken by the lodge. The officer at
once returned the check. There had been a number of prior
defaults and suspensions of the member, and in each case he
was reinstated upon the payment of the delinquent dues and
assessments but never unless a majority of those present at
a regular meeting of the lodge voted in favor of reinstate-
ment. *Held*, that under the by-laws of the order and the
terms of the contract with the member payment of dues and
assessments and an affirmative vote of the lodge are both es-
sential to a reinstatement and that the member was legally
suspended at the time of his death. *Held, further*, that the
fact that there had been reinstatements after former defaults
of the member did not operate as a waiver of the contract
relating to defaults and suspensions nor relieve the member
from the last suspension resulting from his delinquency.

2. SAME. The evidence examined relating to the payments of
dues and assessments by the member, including what is
termed an advance payment, and it is held that he was in
default and under suspension at the time of his death.

Appeal from Cherokee district court; EDWARD E.
SAPP, judge. Opinion filed November 14, 1914. Re-
versed.

*Edgar Bennett,* of Washington, for the appellant.

*William F. Sapp, Andrew S. Wilson,* both of Galena, and *J. W. McAntire,* of Joplin, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by the appellee, Lillie Jenkins, to recover $2000 and interest on a beneficiary certificate issued on the life of her husband, William F. Jenkins, by the appellant, The Ancient Order of United Workmen of Kansas. Jenkins, it appears, became a member of subordinate lodge number nine, located at Galena, in February, 1899. It appears that he had paid all assessments made by the lodge against him and was in good standing in January, 1911. He had been in arrears a number of times, but each time had been regularly reinstated in the order upon payment of the delinquent dues and assessments. He became delinquent for the June, 1911, assessment, and although no record was made of the action the evidence shows that he was reinstated as he had been before. He again became in arrears for the July assessment as well as quarterly dues, and on August 2, 1911, was notified by the financier of the lodge by a letter reading as follows:

"You are in arrears for assessment number seven amounting to $2.00 and dues amounting to $1.00. Under the by-laws of the lodge you were suspended on July 28. Please send us money order for this amount that you may be reinstated by next Tuesday night."

This notice was signed by Truman T. Burr, who had been recently elected financier of the lodge, and the envelope containing the notice bore the name of the preceding financier of the lodge, W. T. Inman. Jenkins issued his check, dated August 4, 1911, for $2 in favor of W. T. Inman to pay the delinquent assessment. This was mailed to Inman from Rockville, Mo., on August 10, 1911, at seven o'clock P. M., and was received by him between eight and nine o'clock on the morning of

August 16, 1911. Burr was called by telephone on that day and told of the receipt of the check and he promised to call and get it later. About three o'clock in the afternoon of August 16, 1911, Jenkins was injured by the falling of a steam shovel upon him and died from his injuries about six-thirty o'clock the same afternoon. The next morning Inman read a notice of the accident in the papers and took to Burr's office the check of Jenkins, for which Burr had failed to call, and told him at that time of Jenkins' death. Burr kept the check until August 22, 1911, and then returned it to appellee with a letter stating that her husband was in default in the payment of assessments and dues and was under suspension at the time of his death, and therefore payment of the benefit was refused. She instituted this action, contending that Jenkins was not in default when he died and that the order was estopped to claim that he was not then in good standing. After the introduction of her evidence a demurrer thereto was overruled and, the order standing upon its demurrer to the evidence, the court gave judgment for the plaintiff. The order appeals and insists that appellee's testimony showed that her husband had been suspended for nonpayment of dues and assessments some time before his death, that the suspension was never set aside, and that there had been no waiver of his nonperformance of the conditions of the contract.

Under the laws of the order the failure to pay assessments on or before the 28th day of each month operates as a suspension of the delinquent member, and the failure to pay dues on or before the 28th day of January, April, July and October of each year likewise operates as a suspension of the member. It is provided that one who has been suspended for nonpayment of dues and assessments can only be reinstated by an affirmative vote of the lodge. It appears that the check of $2, which was intended as a payment of the July assessment was not mailed by Jenkins until

August 10 and the suspension had then been in effect against him for about two weeks. For some reason the letter enclosing the check did not reach the financier at Galena until August 16, the day on which Jenkins died, which was nineteen days after Jenkins was in default and his suspension had become effective. Even if the check had reached the financier a week earlier it would not have operated as a reinstatement. Payment of dues and assessments is not sufficient to set aside a forfeiture or effect a reinstatement of a suspended member. Under the laws of the order and the provisions of the contract there can not be a reinstatement unless a majority of those present at a regular meeting of the lodge vote in favor of reinstating the suspended member. Both payment and a favoring vote are essential to restoration. Liberal provisions are made for restoring a suspended member, but the by-laws explicitly provide that the certificate shall be void so long as the suspension exists and until the suspended member has been reinstated by an affirmative vote in compliance with the laws of the order. They also provide that if a former member dies while under suspension all rights of membership are forfeited and his beneficiaries are not entitled to share in the beneficiary fund. While the check issued by Jenkins was forwarded before his death and received on the day of his death, there was no meeting of the lodge on that day and, of course, no reinstatement. It is said that in the ordinary course of mail the letter of Jenkins should have reached the lodge on the 12th of August and that if it had the lodge would, without doubt, have reinstated him at the meeting on August 15, the day prior to Jenkins' death. Even if payment had been tendered prior to a regular meeting of the lodge the members were at liberty to vote for or against reinstatement as they might choose, and the testimony is that some applications for reinstatement had been rejected. Since Jenkins was in good health and had been reinstated

previously on application it is quite probable that favorable action would have been taken by the lodge, but the regrettable fact is that it was not received before that meeting was held and that he stood suspended at the time of his death.

Something is made of the fact that he had been frequently suspended after he became a member, and that so far as appeared he had always been reinstated by the lodge upon the payment of the delinquent dues and assessments. The fact that reinstatement was never refused does not, of itself, amount to a waiver of the terms of the contract, since each reinstatement was accomplished by an affirmative vote of the lodge, just as the by-laws of the order provided. If the member gave any heed to the action taken he was admonished that an affirmative vote was necessary to reinstatement. Nothing in the action taken would lead a reasonable man to believe that the requirements of the contract and by-laws relating to prompt payment of dues and assessments in the future had been waived. In a similar case it was contended that the receipt of assessments past due, followed by reinstatements, operated as a waiver of compliance with the terms of the contract in that respect, but there, as here, the delinquent member had been reinstated as the by-laws of the order prescribed. It was said that:

"During the time of his membership in said association—four years—a large number of other members of the subordinate lodge of which he was so a member were suspended, in accordance with the by-laws, for nonpayment of assessments made against them. Held, that the custom and habit of such subordinate lodge in restoring and reinstating such suspended members, the reinstatements being made under and pursuant to its by-laws, did not constitute a waiver of the prompt payment of future assessments, nor establish a right of restoration to membership." (Elder v. Grand Lodge of A. O. U. W., 79 Minn. 468, syl. ¶ 2, 82 N. W. 987.)

In *Haupt v. Phœnix Life Ins. Co.,* 110 Ga. 146, 35 S. E. 342, it was held that:

"A policy of life insurance expressly stipulating that it 'shall cease and determine' if any 'premium be not paid when due' is not, in case of failure to pay a particular premium at the proper time, kept in force merely because the insurance company had, in the city of the residence of the insured, a habit or custom of receiving overdue premiums from other policyholders." (Syl.)

Other authorities supporting the same view are *Easley v. Valley Mutual L. Assn.,* 91 Va. 161, 21 S. E. 235; *Rice v. Grand Lodge A. O. U. W.,* 103 Iowa, 643, 72 N. W. 770; *Crossman v. Massachusetts Benefit Association,* 143 Mass. 435, 9 N. E. 753.

Reference is made to *United Workmen v. Smith,* 76 Kan. 509, 92 Pac. 710, as sustaining the claim that there was a waiver of the forfeiture and suspension. That case had a number of features which are absent in this. One of the principal ones was the collection of an assessment on which the member was not in default with one which was overdue and the retention of the money for months and until after the action to recover on the certificate had been brought. It was held that by collecting and retaining later assessments on which the member was not delinquent after a default had been made in an earlier one it tended to show a waiver of the former delinquency. The letter calling attention to the default in that case encouraged the member to believe that payment would be treated as a reinstatement without action on the part of the lodge, while in this case the notice carried the idea that action must be taken by the lodge at the next meeting in order to effect a reinstatement. The case of *United Workmen v. Crandall,* 80 Kan. 332, 102 Pac. 843, strongly supports the view that there was no waiver of the forfeiture and suspension resulting from the default. There the dues and assessments for the

month of January were remitted by the member on February 5 and received by the financier on February 9, and the delinquent member did not die until February 11. The first regular meeting of the lodge after the receipt of the money remitted by the member was on February 13, two days after the delinquent member had died. It was held that an affirmative vote of the lodge was necessary to a reinstatement of the member and that as he was not reinstated prior to his death his beneficiaries lost all right to participate in the beneficiary fund, and that under the circumstances of the case there was no waiver of the forfeiture. (See, also, *Butler v. Grand Lodge A. O. U. W.*, 146 Cal. 172, 79 Pac. 861; 2 Bacon, Benefit Societies and Life Insurance, 3d ed., § 385.)

There is another contention that if Jenkins had been given all the credits to which he was entitled it would have been found that he was not in default at the time of his death. It is said, and it may be conceded, that he was in the clear on January 16, 1911, and that as a monthly assessment was $2 he was chargeable with $14 for assessments for the seven months prior to his death, and in addition to this dues at $1 per quarter, or $3, making a total of $17. It is said that he was entitled to a credit of an advance payment made when he became a member of $1.30 and also that after January 16, 1911, and prior to July 28, 1911, he had paid $16, making his total credits $17.30, thus leaving a balance in his favor of thirty cents. The proof shows, however, that subsequent to January 16 and prior to July 28 the amount paid by him for assessments was $14 instead of $16. It appears that one check of $2, which was received by the financier and for which a receipt was issued, proved, upon examination, to be that of another party, and that it was returned to Jenkins. Later, the amount due on this assessment was included in another check which was introduced in evidence. So, if it be assumed that there was an ad-

vance payment of $1.30, Jenkins was still in default on July 28. The testimony shows that when he became a member he paid the sum of $2.80. He was chargeable with an initiation fee of $1 and with a fee of fifty cents for the beneficiary certificate issued to him. This left $1.30 unaccounted for, so far as the testimony shows, unless it should be regarded as a payment of an assessment for the first month. The testimony is that Jenkins did not pay a February assessment, and that would more than absorb what is called the excess payment.

Prior to the death of Jenkins all parties proceeded on the theory that on July 28, 1911, there was due on his certificate $2 for an assessment and $1 for dues, and this was probably the true state of the account at the time of his death. In no view of the testimony can it be said that he was not in default on July 28, 1911, and neither can it be held that the forfeiture resulting from the default was set aside or waived by any action of the order taken prior to his death.

The judgment will, therefore, be reversed and the cause remanded with directions to enter judgment for the appellant.